UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

GIFFIN, INC.,

        Plaintiff,

vs.

Case No. 11-CV-15010
HON. GEORGE CARAM STEEH

INDUSTRIAL TECH SERVICES, INC.,

        Defendant.
_____/

OPINION AND ORDER DENYING DEFENDANT'S
MOTION TO DISMISS OR TRANSFER VENUE [DOC. 4],
GRANTING PLAINTIFF'S MOTION FOR STAY AND DENYING
PLAINTIFF'S PETITION TO COMPEL ARBITRATION [DOC. 2]

This case comes before the court on plaintiff Giffin's motion for stay and petition to compel arbitration, and defendant Industrial Tech Services' ("ITS") motion to dismiss or to transfer venue.

I.  The Parties

Giffin is a Michigan corporation with its principal place of business in Auburn Hills, Michigan.  Giffin is a fabricator of large sheet metal enclosures and tanks used in the automotive industry for use in the process of coating and painting automobile bodies.  ITS is a Kentucky corporation with its principal place of business in Georgetown, Kentucky.  ITS designs and engineers paint finishing systems and manages the construction of paint finishing facilities at automotive assembly plants.

II.  Background

As part of the construction of the Toyota Motor Manufacturing, Mississippi, Inc.

("TMMMS") plant in Blue Springs, Mississippi, Toyota Motor Engineering & Manufacturing North America, Inc. ("TEMA"; referred to collectively with TMMMS as "Toyota") contracted with ITS for construction of a portion of the plant involving pre-treating, welding and paint priming operations.

On December 1, 2010, ITS subcontracted with Giffin to perform a portion of the work undertaken by ITS in its contract with Toyota. The Subcontract provided that Giffin would fabricate certain automobile painting components.

In March, 2011, Giffin advised ITS that it was incurring additional and unanticipated costs, due in part to ITS. According to Giffin, the extra costs total $2,358,000. After meetings were held between representatives of both parties, ITS acknowledged responsibility for a small amount of additional costs and has either issued purchase orders for the same, or requested that Giffin formally submit a quotation invoice so that purchase orders may be issued.

    A. <u>Mississippi Declaratory Judgment Action</u>

On October 5, 2011, ITS sued Giffin in federal court in Mississippi for declaratory relief. The complaint, which was served upon Giffin on November 1, 2011, seeks a declaration that ITS has no obligation due and owing to Giffin under the terms of the parties' Subcontract, other than those items for which ITS has specifically acknowledged responsibility.

Giffin filed a motion to stay in the Mississippi litigation, arguing that the case is subject to arbitration. That motion is still pending before the Northern District of Mississippi. Neither party has expressly moved for an order compelling arbitration in Mississippi.

B. Michigan Action

On November 12, 2011, Giffin filed the one-count complaint in this court alleging breach of contract. Giffin claims to have incurred increased costs in fulfilling its contract obligations due to ITS's breaches. Giffin seeks an amount in excess of $3 million, plus interest, costs and attorney fees. The complaint alleges that the disputed matters are subject to binding arbitration pursuant to the terms of the parties' contract.

Along with its complaint, Giffin filed an application for stay and petition to compel arbitration in Michigan. In lieu of an answer to the complaint, ITS filed a motion to dismiss or to transfer venue to the Northern District of Mississippi.

III. Defendant ITS's Motion to Dismiss or Transfer Venue

ITS contracted with Toyota to construct part of a new Toyota manufacturing plant located in Mississippi. ITS subcontracted a portion of its work to Giffin. The Subcontract between ITS and Giffin includes a "General Conditions" document, which ITS appears to have prepared for use with all of its subcontractors on the Toyota project.

A. Contract Provisions

Article 1 of the General Conditions is captioned: Statement of Work and Responsibilities. ITS argues that the Subcontract incorporates the entire contract between ITS and Toyota in sub-article 1.1, which states:

> The Contract documents for this contract consist of this Agreement and any Exhibits attached hereto, the Conditions of the Contract between the Owner [Toyota] and the Contractor [ITS] (General, Supplementary and other Conditions), the Drawings, the Specifications, all Addenda issued prior to all Modifications issued after execution of the Agreement between the Owner and Industrial Tech Services . . . and agreed upon by the parties to this contract. This forms the contract and are as fully a part of

3

the contract as if attached to this agreement or repeated herein.

While not artfully drafted, the court agrees that the Toyota/ITS contract is incorporated as a whole into the terms of the Subcontract by sub-article 1.1.

Several of the sub-articles of the Subcontract incorporate portions of the "Contract Documents" between Toyota and ITS.  Sub-article 1.3 states that Giffin is bound to ITS by the terms of the Subcontract, and:

> to the extent that the provisions of the Contract Documents between [Toyota] and ITS[] shall apply to the work of [Giffin] as defined in this contract, [Giffin] shall assume toward ITS[] all the obligations and responsibilities which ITS[], by those Documents, assumes toward [Toyota] and shall have the benefit of all rights, remedies and redress against ITS[] which ITS[] by those Documents, has against [Toyota], insofar as applicable to this Subcontract, provided that where any provision of the Contract Documents between [Toyota] and ITS[] is inconsistent with any provision of this Subcontract, this Subcontract shall govern.

By this language, terms of the Contract Documents between Toyota and ITS are incorporated into the Subcontract "to the extent" that they "apply to the work of Giffin as defined in [the Subcontract]".  Sub-article 1.4 is the corallary to 1.3, binding ITS to Giffin in a similar way, and incorporating the terms of the Contract Documents between Toyota and ITS to the extent such provisions apply to the work of Giffin.

The Subcontract does not expressly define the term "work".  The Purchase Requisition issued by ITS to Giffin, which is clearly part of the Subcontract, states:

> This contractor shall furnish all necessary labor, material, freight, supervision, Insurance, housekeeping, and incidentals which maybe [sic] required to complete the work described below . . . "

The General Terms and Conditions of the Contract between Toyota and ITS defines "work" as "[t]he construction and services required by the Contract Documents, whether

4

completed or partially completed, and includes all other labor, materials, equipment and services provided, or to be provided by Contractor to fulfill Contractor's obligations." General Terms and Conditions 3.5.

The term "work" refers to the technical scope of Giffin's work under the Subcontract.  ITS subcontracted with Giffin to perform a portion of the work that ITS was contractually obligated to perform for Toyota.  Giffin's suit for breach of contract obviously involves "work" to which the provisions of the contract documents between Toyota and ITS apply.  Sub-article 1.3 thus gives Giffin "the benefit of all rights, remedies and redress against ITS" which the contract gives ITS against Toyota.  Giffin seeks to enforce its right to arbitrate, and at issue in this case is where arbitration is to occur.

Article 17 of the Subcontract is an arbitration clause:

Any dispute or claim arising out of, or relating to this Contract or the breach or performance thereof, shall be settled by arbitration, and the Contract[or] shall not delay the work during any arbitration proceedings except by written consent of ITS/TRINITY.  The decision of the **arbitrators** shall be final and binding upon both parties, and judgment may be entered upon it in accordance with applicable laws in any court having jurisdiction **there**.

(Emphasis added).  Article 18 is an Interpretation of Agreement clause, which provides: "This Contract shall be construed according to the local, state and federal laws."  The Subcontract provides for arbitration, but does not specify where such arbitration must take place.

The contract between Toyota and ITS also contains provisions addressing choice of law and arbitration.  The choice of law provision in that contract provides:

5

> The Contract Documents are executed and delivered in, and shall be governed, enforced and interpreted in accordance with the laws of the state where the Project is located . . . .

(Toyota General Terms and Conditions, p. 39, ¶ 47.7). The alternative dispute resolution provision in the contract provides first for good faith negotiations, then the right to non-binding mediation, and finally binding arbitration as follows:

> Written notice of the intent to submit a matter to arbitration shall be given by the party requesting same. The arbitration proceedings shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, or if the parties so agree, the relevant rules of another arbitration organization. In any case, regardless of any rules of the selected arbitration organization to the contrary, only one arbitrator shall be used to decide the outcome of the arbitration. Such arbitration shall be held in the state and county where the Project is located. The prevailing party shall be entitled to an award of attorney's fees. The arbitration shall be governed by the United States Arbitration Act, 9 U.S.C. §§ 1-16, and judgment upon the arbitrator's award may be entered in any court having jurisdiction over such matter.

(Toyota General Terms and Conditions, p. 39, ¶ 47.8).

Sub-article 1.3 of the Subcontract states that where any provision of the contract between Toyota and ITS is inconsistent with any provision of the Subcontract, the Subcontract will govern. The Subcontract requires arbitration without specifying where said arbitration must take place. The only reference to a location is in the last sentence, which provides that judgment may be entered by any court having jurisdiction "there", referring to the jurisdiction where the arbitration takes place. The Subcontract is silent on where arbitration must occur. The contract, on the other hand, clearly specifies that arbitration must "be held in the state and county where the Project is located" – Mississippi. Far from being inconsistent on where arbitration is to take place, the provisions of the contract and Subcontract are complementary. The Subcontract clearly

incorporates the provisions of the Toyota/ITS contract with regard to the provision requiring that binding arbitration take place in the state and county where the project is located.

The Subcontract does not provide a mechanism for instituting arbitration, while the contract provides that "written notice of the intent to submit a matter to arbitration shall be given by the party requesting same. The arbitration proceedings shall be conducted in accordance with the Construction Industry Arbitration Rules of the American Arbitration Association, or if the parties so agree, the relevant rules of another arbitration organization." Another area where the Subcontract is silent is attorney's fees, while the contract provides that "the prevailing party shall be entitled to an award of attorney's fees."

With regard to those provisions of the contract to which the Subcontract is silent, there is no inconsistency. The issues of where arbitration is to take place, the rules governing the arbitration process, and the availability of attorney's fees would all be governed by the contract between Toyota and ITS. However, there is one provision that does appear to be inconsistent, that being the number of arbitrators. The Subcontract refers to "arbitrators" in the plural, while the contract states "only one arbitrator shall be used to decide the outcome of the arbitration." If the parties cannot agree on the number of arbitrators, it would appear that the Subcontract would control. However, like any issue requiring resolution prior to arbitration, this would be an issue for the Mississippi court to resolve.

B. <u>First-to-File Rule</u>

Defendant argues that this case should also be dismissed based on the first-to-

file rule, as there is already an action pending between the parties, involving substantially similar subject matter, in the United States District Court for the Northern District of Mississippi.

The first-to-file rule is a "well-established doctrine that encourages comity among federal courts of equal rank." Certified Restoration Dry Cleaning Network v. Tenke Corp., 511 F.3d 535, 551 (6th Cir. 2007) (citation omitted). "The rule provides that when actions involving nearly identical parties and issues have been filed in two different district courts, 'the court in which the first suit was filed should *generally* proceed to judgment.'" Id. However, this circuit recognizes that a plaintiff does not have the right to bring a declaratory judgment action in the forum of his choosing. Such anticipatory suits, in addition to suggesting forum shopping, are factors that weigh against enforcement of the first-to-file rule. Id. at 551-52. In fact, "[c]ases construing the interplay between declaratory judgment actions and suits based on the merits of underlying substantive claims create, in practical effect, a presumption that a first filed declaratory judgment action should be dismissed or stayed in favor of the substantive suit." Id. at 552 (citing AmSouth Bank v. Dale, 386 F.3d 763, 791 n.8 (6th Cir. 2004)).

The Mississippi and Michigan actions involve the same parties and the same issues, specifically a contractual dispute that is admittedly subject to arbitration. While the Mississippi action was filed first, it was an anticipatory suit, seeking a declaration by ITS that it has not breached any of its contractual obligations to Giffin. Under Sixth Circuit authority, there is a presumption that the Mississippi declaratory judgment action should be dismissed or stayed in favor of the Michigan substantive suit. AmSouth Bank, 386 F.3d at 791 n.8. Obviously, this court is not in a position to dismiss the

Mississippi action. Furthermore, the court finds that it is not constrained to dismiss this action under the first to file rule.

Finally, defendant asks this court to transfer this action to Mississippi pursuant to 28 U.S.C. § 1404(a), so it may be consolidated with the action already pending in that state. Based on the arguments made by defendant in the pleadings, the court is not persuaded that there is any legal basis for granting the request to transfer.

IV. <u>Plaintiff's Application for Stay and Petition to Compel Arbitration</u>

In arguing for the court to compel arbitration in Michigan, plaintiff highlights all of the parties' connections to Michigan. For example, Michigan is where the Subcontract was entered, where fabrication took place, and where payment was made for work done by plaintiff under the Subcontract. While relevant to supporting a finding of proper venue, these factors are not material where the parties have contracted where arbitration is to take place.

The Supreme Court has held that the Federal Arbitration Act "leaves no place for the exercise of discretion by a district court, but instead mandates that district courts *shall* direct the parties to proceed to arbitration on issues as to which an arbitration agreement has been signed." <u>KPMG LLP v. Cocchi</u>, 2011 US Lexis 7924 (November 7, 2011) (citing <u>Dean Witter v. Byrd</u>, 470 U.S. 213, 218 (1985)). Pursuant to the Federal Arbitration Act, 9 U.S.C. § 4, "[t]he hearing and proceedings, under such agreement, shall be within the district in which the petition for an order directing such arbitration is filed." A district court in Michigan lacks authority to compel arbitration in other districts, or its own district if another has been specified for arbitration. See, <u>Management Recruiters Int'l Inc. v. Bloor</u>, 129 F.3d 851, 854 (6th Cir. 1997).

9

Having concluded that arbitration is to take place in Mississippi, this court DENIES plaintiff's motion to compel arbitration. Because the parties are in agreement that their dispute should be arbitrated, it is anticipated that arbitration will be pursued in Mississippi. This court hereby STAYS this case pending notice that arbitration has been commenced in Mississippi. At that time, the court will dismiss the complaint in this case.

V. Conclusion

For the reasons stated above, defendant's motion to dismiss or to transfer venue to Mississippi is DENIED without prejudice. The case will be dismissed upon receipt of notice that arbitration has been pursued in Mississippi. Plaintiff's motion to compel arbitration in Michigan is DENIED. The case is STAYED at this time.

Dated: March 28, 2012

S/George Caram Steeh
GEORGE CARAM STEEH
UNITED STATES DISTRICT JUDGE

---

CERTIFICATE OF SERVICE

Copies of this Order were served upon attorneys of record on March 28, 2012, by electronic and/or ordinary mail.

S/Josephine Chaffee
Deputy Clerk